UNITED STATES DISTRICT COURT
District of New Jersey

NOT FOR PUBLICATION

LETTER OPINION

Jennifer H. Walker
Binder and Binder, P.C.
60 East 42nd St., Suite 520
New York, NY 10165

Amanda J. Lockshin
Special Assistant U.S. Attorney
United States Attorney's Office
c/o Special Security Administration
26 Federal Plaza, Room 3904
New York, NY  10278

        Re:    Tonia Green v. Commissioner of Social Security
               Civil Action No.: 11-2145

Dear Counsel:

      Presently before the Court is an appeal filed by Tonia Green (hereinafter "Claimant") seeking review of the Administrative Law Judge's ("ALJ") decision denying her claim for Supplemental Security Income Benefits ("SSI").  No oral argument was heard pursuant to Federal Rules of Civil Procedure 78.  Plaintiff argues that the ALJ erred in not affording controlling weight to the opinion of her treating physician Dr. Lewko, and for failure to properly evaluate the Claimant's credibility.

## PROCEDURAL HISTORY

      Claimant initially applied for SSI on March 23, 2007.  The claim was initially denied and again upon reconsideration on February 4, 2008.  A hearing was held before ALJ Dennis O'Leary on June 3, 2009.  ALJ O'Leary denied Claimant's application on June 19, and the Appeals Council denied the request for review.  The Claimant is appealing the ruling of ALJ O'Leary's ruling pursuant to 42 U.S.C. § 405 (g).

## FACTUAL BACKGROUND

      Tonia Green was born in 1972, and was 36 years old at the time of the ALJ hearing (Tr. 25).  She is a high school graduate who has vocational training as a nurse's assistant.  Her only relevant work experience is as a nurse's aide at the Christian Health Care Center in Wyckoff, NJ (Tr. 150).  Her job consisted of being mainly on her feet, helping residents shower, dress and make beds (Tr. 153).  She worked there for eleven years at a rate of $15.25 per hour for 48 hours per week before leaving the job on December 27, 2006, the same day she initially applied for SSI.  The cause of her leaving was  rheumatoid arthritis (Tr. 26, 109).

1

On April 14, 2008, the Claimant went back to work part-time as a nurse's aide, working approximately 16-20 hours per week (Tr. 27). After six months, she transitioned back into a full-time position as a nurse's aide before leaving her job again in December 2008 due to the arthritis (Tr. 27). She has not held a job since that date (Tr. 28). The Claimant states that due to the rheumatoid arthritis, she can only sit for 15-20 minutes at a time before getting stiff, and states that she can stand no longer than five minutes because her feet will start burning and begin to hurt (Tr. 29). She is able to drive for fifteen minutes at a time, but mainly spends her days inside, only going outside when she is not hurting (Tr. 28).

She was originally diagnosed with rheumatoid arthritis in her left foot and ankle in 2003 (Tr. 26). On June 6, 2005, the Claimant began seeing her treating physician, Dr. Michael Lewko, M.D. (Tr. 311). Around February 9, 2006 the symptoms began to interfere with her ability to work until she ultimately had to leave the job in late December (Tr. 108). On October 5, 2007 at the request of the Social Security Administration, Dr. Lewko administered a residual functioning capacity assessment (Tr. 243-245). Dr. Lewko reported that Ms. Green had rheumatoid arthritis in her left ankle for the past four years. Based on his evaluation, Dr. Lewko opined that she could stand and/or walk for less than 2 hours per day, and that that she could lift or carry no more than two pounds. (Tr. 244). On January 2, 2008 Dr. Lewko completed a Rheumatoid Arthritis Impairment Questionnaire (Tr. 304-310). His laboratory studies diagnosed her with rheumatoid arthritis in the left ankle. In the report he concluded that in a competitive five-day workweek, the Claimant could sit for one hour a day, stand for one hour a day, and could occasionally carry up to ten pounds. The patient's pain and symptoms wer only periodic enough to interfere with attention and concentration. (Tr. 314).

On May 15, 2009, a month before the ALJ hearing, Dr. Lewko completed a Lower Extremities Impairment Questionnaire citing the Claimant had arthritis pain in her left ankle and along secondary osteoarthritis (Tr. 311-318). In the report, he concluded that in a competitive five-day work week, the Claimant could only sit for two hours a day, stand for 0-1 hours a day (Tr. 314). At the time of the ALJ hearing, the Claimant was taking tramadol, calcium, folic acid, methotrexate, prednisone and hyrdocodone for the swelling and pain. (Tr. 30). The Claimant stated that it made her tired, drained and drowsy (Tr. 31).

Other doctors also evaluated the Claimant and gave their medical opinions on her condition during this time. On April 6, 2007, Dr. Priscilla Kaszubski, an evaluating physician, found that the Claimant was 40% improved after physical therapy and that her physical examination demonstrated a significant increase in motion and strength to the ankle (Tr. 189). On June 26, 2007, State agency review physician Dr. Joseph Udomsaph completed a residual functional capacity assessment and determined that the Claimant could frequently lift ten pounds, occasionally lift 20 pounds, sit about six hours in an eight-hour work day, and stand or walk about six hours in an eight hour work-day (Tr. 175). On January 17, 2008, Dr. Marc Weber evaluated the Claimant and determined that she had only "mild tenderness" in her left foot, was able to move around independently during the examination, and could walk at a reasonable pace without a hand-held assistance device (Tr. 297-299). On February 1, 2008, another state agency review physician, Dr. Norman Schatel, stated that the Claimant was capable of light work (Tr. 301).

## LEGAL STANDARD

In order to receive SSI benefits under the Social Security Act, a claimant must be disabled based on an "inability to do any substantial or gainful activity by reason of any

2

medically determinable physical or mental impairment which can in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 20 C.F.R. § 404.1505(a). A person is disabled for these purposes only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering [her] age, education and work experience engage in any other kind of substantial gainful work which exists in the national economy…" 42 U.S.C. § 1382c(a)(3)(B). The Social Security Regulation established a five-step sequential evaluation process to decide if the claimant is disabled and able to receive SSI benefits. 20 C.F.R. § 404.1520(a)(4).

The sequential evaluation is a process that must be followed in order. If it is determined that the claimant is disabled or not at any step, a decision is made and the evaluation will cease. If a determination cannot be made at any step, the evaluation will continue on to the next step. At step one, the Commissioner is required to determine if the claimant is engaging in any substantial gainful activity. "Substantial gainful activity" is physical or mental work that is usually done for pay or profit. 20 C.F.R. § 404.1572(b). If the answer is no, then the Commissioner must determine at step two whether the claimant has any severe impairments. If the claimant does have severe impairments, the Commissioner will determine in the third step whether the severe impairment meets or equals the criteria of impairments listed in 20 CFR 404, Subpart P, Appendix 1. If the claimant does suffer from one of the listed impairments then she is disabled. If not, the Commissioner then proceeds to step four where he must determine: (a) the claimant's residual functional capacity ("RFC"), and (b) whether the claimant can go back to her past relevant work. If claimant is unable to perform her past relevant work based on her RFC, the Commissioner proceeds to the final step. At step five the burden shifts to the Commissioner to show that the claimant can perform other work, based on her RFC, age, education and prior work experience. If the Commissioner cannot show that the claimant can perform other work in existence, claimant is disabled and entitled to benefits.

The Court must affirm the ALJ's decision if it is supported by substantial evidence. Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000). See also 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 564-65 (3d Cir. 1988). Thus, when the "[ALJ] is faced with conflicting evidence he must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987).

In the determination of whether there is substantial evidence to support the Commissioner's decision, the reviewing court must consider the: "(1) objective medical facts; (2) diagnoses and medical opinions of examining physicians; (3) subjective evidence of pain and disability as described by claimant and corroborated by others who have observed her; and (4) claimant's age, education background and work history." Curtain v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981). If a medical opinion is consistent with other substantial evidence, it is given controlling weight. 20 C.F.R. §§ 416.927(c)(1), (d)(2). However, if medical opinions are inconsistent with other evidence the Commissioner must weigh all the evidence to determine if the claimant is disabled. 20 C.F.R. § 416.927(c)(2). With this framework in mind, the Court now turns to the Claimant's arguments.

LEGAL DISCUSSION

A.   Summary of the ALJ's Findings

    The Court begins by reviewing the ALJ's application of the above five-step process. At step one, ALJ O'Leary found that Claimant has not engaged in substantial, gainful activity since December 27, 2006, the alleged onset date. ALJ O'Leary determined that her part-time work from April 14, 2008 until December 3, 2008 was an unsuccessful work attempt, rather than substantial, gainful activity (Tr. 15). The ALJ then concluded at step two that Claimant had <u>severe</u> rheumatoid arthritis pain with swelling in her ankles based on the medical evidence in the record.[1] <u>Id.</u> In step three, ALJ O'Leary found that the Claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ focused particularly on listing 1.02 for major dysfunction of a joint, and determined the listing requirements were not demonstrated by the available medical evidence (Tr. 16).

    In step four, the ALJ found the Claimant retained the RFC to perform the demands of sedentary work, determining that she could lift and carry objects up to ten pounds, stand and walk for up to two hours, and sit for up to six hours in an eight-hour day as defined in 20 C.F.R. 404.1567 and 416.967). In finding the claimant's RFC, the ALJ used both objective medical evidence and the Claimant's own testimony. After reviewing Dr. Lewko's treatment notes, Dr. Weber's independent examination, and the Claimant's own testimony, the ALJ determined Dr. Lewko's opinions were "unsupported" and the Claimant was able to perform sedentary work (Tr. 18).

    Subsequently, the ALJ found that although the Claimant could not resume work as a nurse's aide, based in part on Medical-Vocational Rule 201.28, jobs existed in significant numbers in the national economy that the claimant could perform (Tr. 19). In making this decision, the ALJ considered the Claimant's age, education, work experience and RFC. The ALJ determined that the Claimant has not been under a disability since December 27, 2006, the date her SSI application was filed, and was not entitled to SSI. <u>Id.</u>

B.   Analysis

    1.   The ALJ Failed to Follow the Treating Physician Rule

    Claimant asserts that the opinion of treating physician, Dr. Lewko, is entitled to controlling weight over the opinions of the other doctors, including Dr. Weber, and the Claimant's own personal testimony. However, the ALJ has properly determined that the treating physician is not entitled to controlling weight because there is other substantial conflicting evidence. The ALJ properly exercised his discretion in determining that the Claimant is able to perform a full range of sedentary work.

    From his initial evaluation of the Claimant on June 6, 2005, Dr. Lewko saw the Claimant every six-eight weeks and remained consistent with his diagnosis and evaluation that the Claimant is unable to perform any work, including any sedentary work. Dr. Lewko based these

---

[1] ALJ O'Leary considered reports from Dr. Kaszubski, Dr. Johnson and Dr. Weber (Tr. 15-16).

4

observations on the Claimant's various appointments with him (Exhibit 6F), a Rheumatoid Arthritis Impairment Questionnaire (Exhibit 10F), and a Lower Extremities Impairment Questionnaire (Exhibit 11F).

However, the ALJ properly determined that the totality of the "objective medical findings reveal some limitations, but not to the extent alleged by the Claimant." (Tr. 18). In making his decision, the ALJ considered Dr. Weber's independent examination, State agency review physicians, the Claimant's testimony regarding her activities of daily living and her significant attempts at work (Tr. 18). Dr. Weber opined that the Claimant is independent of activities in daily living, can ambulate independently without an assistive device, and that she had no swelling and only mild tenderness in her left foot (Exhibit 7F). Dr. Weber's determination was supported by State agency review physician's, Dr. Joseph Udomsaph and Dr. Norman Schactel. After reviewing the record, Dr. Schactel opined that the Claimant was capable of light work (Tr. 301). While Dr. Udomsaph found specifically that the Claimant could carry up to twenty pounds occasionally, ten pounds frequently, could stand/walk for six hours in an eight-hour day, could sit for six hours in an eight-hour day and had no limitations in her ability to push or pull (Tr. 175). The ALJ also considered the Claimant's daily activities and attempts are working because "any kind of medical and nonmedical evidence can potentially satisfy the substantial evidence test." SSR 96-2p.

Claimant asserts that the ALJ, like in Morales v. Apfel, improperly based his decision not on contrary medical evidence, but rather on his own "credibility, judgment, speculation or lay opinion." Morales v. Apfel, 225 F.3d 310, 317-318 (3d Cir. 2000). This assertion fails. In Morales, the ALJ disregarded multiple treating and examining physicians for his own speculation based solely on his personal impression of the Claimant and the testimony of the vocational expert. In this case, however, there was no speculation involved. The ALJ properly selected between conflicting medical evidence, and did not substitute his own opinion.

Claimant also asserts under Brownawell v. Commissioner, that the ALJ improperly credited the testimony of consulting physicians who did not examine the Claimant, specifically Dr. Udomasaph and Dr. Kaszubski. In Brownawell, the ALJ discredited the opinions of two evaluating physicians "in a large part on evidence that [did] not exist." Brownawell v. Commissioner, 554 F.3d 352, 357 (3d. Cir. 2008). The Court held that the ALJ's determination should be reserved because his determination to discredit the evaluating physicians was not based on substantial evidence, but rather on one non-examining consultant. Id. at 357. This assertion also fails. In this case, ALJ O'Leary, in making his determination that Dr. Lewko's opinion should not have controlling weight, considered the objective medical opinions of several evaluating and non-evaluating physicians, along with the subjective evidence of pain and disability as described by Claimant and by others who have observed her. The ALJ did not improperly dismiss the opinion of Dr. Lewko, rather he weighed the contradicting objective medical opinions and found for the later.

In making his conclusion that Dr. Lewko's opinion should not be given controlling weight, ALJ O'Leary weighed the opinion of Dr. Lewko under the factors in 20 C.F.R. § 404.1527(d)(2)-(6) (Pl. Br. 16). He was aware and considered the fact that Dr. Lewko was a board-certified specialist in rheumatology who treated the Claimant every six-eight weeks for four years leading up to the ALJ hearing, and that his opinions remained consistent throughout his treatment. However, the ALJ properly weighed the conflicting objective medical evidence from Dr. Weber, Dr. Udomsaph, Dr. Schactel and Dr. Kaszubski; and concluded that the treating physician's opinion was not entitled to controlling weight.

5

###### 2. The ALJ Failed to Properly Evaluate Ms. Green's Credibility

Claimant further asserts that the ALJ failed to properly evaluate Ms. Green's credibility because the ALJ failed to properly weigh the factors set forth in the Social Security Ruling ("SSR") 96-7p in making his decision (Pl. Br. at 18). However, the ALJ did properly weigh the factors and, in doing so, properly exercised his discretion in rejecting the Claimant's subjective testimony.

In evaluating the Claimant's credibility, the ALJ must follow a two-step process. First, the ALJ must "consider whether there is an underlying medically determinable physical or mental impairment… that could reasonably be expected to produce the individual's pain or other symptoms." SSR 96-7p. Second, the ALJ "must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. Whenever there are statements made by the Claimant that are not substantiated by objective medical evidence, the ALJ must base the credibility of the individual's statements on the entire record. Id. In making a credibility assessment in the second prong, the ALJ must consider: (1) the individual's daily activities; (2) the location, duration, frequency and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage effectiveness and side effects of any medications the Claimant has taken; (5) other treatments the individual has received for relief of pain; and (6) any other restrictions concerning the individual's limitations due to the pain or symptoms. Id.

The Claimant argues that the ALJ evaluated the Claimant's credibility with his own RFC assessment, rather than the evidence on the record. In raising this point, the Claimant argues that the ALJ conceded that the Claimant's attempts to go back to work were unsuccessful, and that the Claimant, under Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979) is entitled to "substantial credibility" because she has a "significant work history." In Dobrowolsky, the individual had a twenty-nine year work history, and his subjective testimony that he could not perform sedentary work was supported by all of the objective medical evidence. Id. The Court held that the ALJ erred in finding that the individual could perform sedentary work because the ALJ's findings were based on the opinion of one vocational expert, rather than the substantial evidence. The case at hand differs.

In this case, ALJ O'Leary properly evaluated the Claimant's credibility based on the entire record. Because the subjective statements made by the Claimant were not substantiated by objective medical evidence, the ALJ had to base the creditability of the testimony on the entire record. The Claimant was not entitled to "substantial credibility" under Dobrowski, because, although the plaintiff had worked for roughly 17 years as a nurse's aide, there was conflicting testimony between her subjective views and other objective medical testimony. In making his determination of the credible testimony, the ALJ considered all of the factors in the second prong. The ALJ determined that the evidence failed to demonstrate total debilitating limitations resulting from her rheumatoid arthritis because: she reported being improved on Remicade (Exhibit 2F), independent examinations by Dr. Weber in January of 2008 failed to show significant limitations, the Claimant's own personal testimony did not reveal debilitating limitations in her daily living routine and physical therapy lead to a 40% improvement in March of 2007 (Exhibit 5F). Here, the ALJ properly considered the credibility of the Claimant, and

determined that the objective medical findings revealed some limitations, but not to the extent alleged by the Claimant (Tr. 18).

## CONCLUSION

     For the reasons discussed above, the ALJ's decision that Plaintiff was not disabled within the meaning of the Social Security Act since March 23, 2007 was supported by substantial evidence. The decision of the ALJ is hereby affirmed. An appropriate order accompanies this Opinion.

DATED: May 31, 2012

                                    s/ Jose L. Linares_____
                                    JOSE L. LINARES,
                                    UNITED STATES DISTRICT JUDGE